And we'll turn to yours, U.S. v. Bahiry. Mr. Chabron? Yes. You're on. Good morning. Thank you very much. My name is Jeff Chabron. I'm representing Dr. Hatem Bahiry. Dr. Bahiry was convicted after trial of Medicare fraud. He was working as a physical therapist at a clinic in Brooklyn. A good part of the government's trial was based upon videotapes made by a government informant who was an agent of the government, Boris Levin, who was an elderly man who lived in that area. Boris Levin died before trial and therefore was unable to testify. The attorney for Dr. Bahiry at trial sought to question a government FBI agent about a number of inconsistent statements that were on debriefings that were made by Boris Levin immediately after he would walk out of the clinic, which included, I think, some very substantive inconsistencies, including a lot of the videotapes that were made had different timings than the reports that were given to the defense. There were inconsistencies in the way that bills were filled out. There were inconsistencies in some of the descriptions of doctors in the clinic. The ruling at trial is that the questioning, although it was originally allowed in, there was case law presented and then Judge Schofield then reversed her decision and struck what had been allowed in and disallowed any further questioning based on the idea that a prior inconsistent statement by a government agent was not admissible. Part of that was also based on a notice requirement, in that at the time the attorney did not give notice to the government that he sought to introduce prior inconsistent statements. The Federal Rules of Evidence were then amended shortly after that was abolished, was changed. However, we believe that the ruling is inconsistent with the Federal Rules of Evidence, in that in this case, literally, Dr. Bahiri was not allowed to present a defense, in that such a large part of the evidence against him was based upon Mr. Levin, being that he was unavailable and had passed away. It is not he was not able to present a defense and effectively cross-examine the agent as to all of the disparities in the briefings. Well, just assume, arguendo, that you're correct. While I was in this era of homeless, it seemed to me that the government had adduced quite a lot of evidence of your client's guilt. I'm sorry, Your Honor, I didn't completely hear you. Why, assuming, just for the purposes of argument, that you're correct on the point concerning the debriefing memos, why wasn't this harmless? I mean, there was a lot of evidence the government put in the record of your client's guilt. I don't believe that it was harmless, Your Honor. Specifically, there are huge disparities in the timing of the videotapes, which would cause inconsistencies as to when Boris Levin is going into the clinic and when the videos are being shot. Specifically... Yeah, but there was a lot of evidence from people who worked in the clinic, people who visited the clinic, that your client was billing for examinations he never performed. Part of the disparities would be that on the super bill that is being submitted, that there was a lot of evidence that there are two different Xs being done for different evaluations of patients, and that Dr. Bihiri would do an X into one area of the super bill, and then there were additional Xs that were being put in that were different, sort of done in a different way, and that's consistent with other evidence. And he never sees the super bill again. Part of this is something that could have been, that could have come out during cross-examination of these debriefings, in terms of how the bill is being filled out during the examination of the patients. And in this case, it would be based largely on the examination of Mr. Levin. The evidence, I think the video evidence that he submits, that's submitted by Levin, is quite, is very important in the government case. Yet, the idea that there's huge disparities in the timing and when he goes in and why, are there missing parts of the video? All of these are things that I think would have had quite an impact on the way this evidence would be viewed, so I don't believe that the error is harmless at all. Can I just ask you, with regard to the video, the discrepancies in the timing, that did get before the jury, didn't it? They were aware that there were problems, that the numbers, the timing on the videos didn't match up. Yes, it did. Some of it did come in, but I don't believe that. Essentially, there were answers given by the agent that has to do with the reformatting. But I don't believe that this is something that, this could have been really fleshed out a lot more had, I think, Mr. Levin been there. I don't think that the answers that were given really made sense. And I think it's something Well, perhaps that's helpful to the defense, then, if the explanations given for the discrepancies in the time, what was in front of the jury, did not, in fact I believe, Your Honor, that there were further time discrepancies that were not, that could have been introduced had the debriefings been, had the debriefings been introduced. Because there are certain inconsistencies as to when Mr. Levin would go in and when he would come out, that would line up with different timing inconsistencies. And those were, those were areas that Mr. Schoenbach was not allowed to get into. I may have misunderstood you, and pardon me if I did. Is it your position that Rule 807 does not have a notice requirement? It's my understanding that it no longer does. That, that has been changed. And to ask a threshold question, or at least for me a threshold question, is the government correct that the standard of review for your constitutional claims is plain error? I... The government so asserts at page 39 of its brief. Yes. You agree, plain error is the standard of review here? Yes. Okay, thank you. Thank you. You've reserved some time. We'll hear from Mr. Richen. May it please the Court, my name is Stephen Richen. I represent the government on this appeal and represented the government during the trial in the district court below. Just to begin by answering the question that Judge Parker asked a few minutes ago, there is a notice requirement in Rule 807 under its current provision. But let me also correct some other things that I think have been misdescribed. Appellant counsel was not, trial counsel was not present during the trial and doesn't have the same level of familiarity. The statements that we're talking about are a set of two or three statements that this confidential source made after he came out of the clinics. The ones that counsel sought to offer were statements of brief factual descriptions of things that had purportedly happened that he claimed were not shown on the videos. The confidential human source had nothing to do with the timing of the videos. That was not an issue that he knew anything about or addressed or was addressed in his post-trial statements. This was really a very narrow issue that was presented by Mr. Beharia's counsel at trial. And to follow up on what Judge Cabranes has pointed out, the standard here for the constitutional claim is plain error review. The decisions of the district court here were entirely consistent with the holdings of this court. The decision not to allow this evidence in pursuant to 801D2D was entirely consistent with the holdings in Yildiz and Santos. And the decision not to allow these statements in pursuant to Rule 807 because no notice had been given was entirely consistent, indeed, I would say mandated by Ruffin and Oates. And so to obtain relief, the appellant has to show that these decisions by the district court in conformity with this court's holdings were plain error, meaning clear or obvious error about which there can be no reasonable dispute. The appellant has come nowhere near that standard. With respect to the decision of the district court on Rule 807, in other words, following Ruffin and Oates and saying, sorry, you haven't given notice and, therefore, it can't come in pursuant to that provision, the standard is that it had to be an abuse of discretion, meaning manifest error. Again, the appellant has come nowhere close. When a district court follows the pertinent holdings of this court, that is not an error at all, and it is manifest error. Nor was it error at all. The holdings of Gilders and Santos were neither arbitrary nor disproportionate to the purposes they served. They kept from the jury unreliable evidence, unsworn out-of-court statements offered for their truth. Doesn't this case, though, give an example, perhaps, of an unfair application of those cases where, just by virtue of the individual not being available to testify for cross-examination, those other cases recognize that there's a certain unfairness in this rule of these witnesses not being government witnesses, not being party opponents, that could be mitigated by the testimony of those individuals. And here, that's not possible. I actually think that the application of the rule in this case showed some of the virtues of the rule. So one of the reasons, obviously, to keep out hearsay is that you can't have cross-examination. It's an unsworn statement. There can be misunderstandings, misperceptions, and this case demonstrates that. For example, the speaker and the witness, they share a common culture. So everything that was said had to be translated, and even when translated accurately, there may have been a misperception because words are used differently in different cultures. So the principal statement that the defense wanted to put into evidence was that Mr. Levin, the source, had been examined briefly by a black male doctor. That's what was said. And the defense wanted to argue there was no black male doctor. In fact, there are two ambiguities in that statement based on differences in cultures. I think most Americans, when they hear the word doctor, think of a medical doctor, a physician, whereas in the clinic, the Russian speakers would refer to people like physical therapists as doctor. Secondly, the term black is a term that in different cultures has different meanings, and so our view was that the reference to a brief examination by a black male doctor may well have been a reference to the brief examination by Hattem Bahiri and his colleague, Kesham Hegazi. So I think that's, in addition, the speaker here was an older man who, according to Bahiri, was suffering from dementia, and just two years later spoke to an agent who described him as incoherent at that point. So whether the speaker was accurately remembering and recounting all that had happened to him was unclear. So, I mean, it's a long-winded answer to your question, Your Honor, but I think that here it really did serve its purpose. Plus, the Rule 801D does not say that the statement derives not from any sense of the reliability of those statements. As this Court has said, it's really a remnant of an older view about the adversary process, that people who are adverse to one another should be responsible for their conduct and that of their agents. But the courts have been quite clear that the government is not an ordinary adversary in this context. Moreover, you have a particular category of people here who are informants, who are not, according to many courts, true agents of the government, and who deal in rumor and speculation, further increasing the risk that evidence will be put before a jury which is not reliable. This also did not infringe on a weighty interest of Hatem Behiri. These statements were offered to show that the videos didn't show everything that happened in the clinics. The videos themselves showed that. These were videos made by a camera in a bag, which was carried into the clinics, put down, picked up, put down. Sometimes it faced a wall. And trial counsel had multiple government witnesses acknowledge that the videos didn't show everything that happened. So these statements served to prove a point that had already been proven. Nor, as Judge Sotomayor said, was a standard for an adverse effect on substantial rights. The evidence, as the district court said in her decision on the motion for a new trial, was overwhelming, even without the video of one of these encounters. This was only two days of 27 days of video, which showed a pattern that was repeated over and over again. There were witnesses who testified that they had done scores or translated scores of these so-called evaluations and that what was shown on the videos was consistent. There was billing for physical therapy services that was never provided. There was an effort to conceal the fraud by Hatem Behiri by implementing certain rules. And there were evaluation forms, which were cookie-cutter evaluation forms. They showed the same levels of pain for patient after patient after patient. And so, in short, the evidence was overwhelming. There is no way that the appellant has satisfied the standard of plain error or the error of arbitrary conduct on the part of the district court. Thank you. Thank you. Defendant's counsel has reserved three minutes. Thank you very much. Just to echo some statements that were made, I believe that constitutional claims like the right to not present an effective defense are subject to a higher standard of review, and Your Honor is correct in that Santos and Eldis are different in that the agent was there to be questioned. To be clear, this is not an informant such as a confidential informant or someone who has been charged with a crime who might be less reliable. This is an agent that was brought in by the government, and I think some of the government's arguments about there being a language barrier or something or the government chose their agent and now they're chosen to sort of distance themselves from him, I don't believe that that is appropriate. The videos, in terms of it being harmless error, the government repeatedly harped on the videos in these two days of Boris Levin being, Boris Levin's evaluations repeatedly throughout the trial. The one question that was asked that the counsel mentioned as to, there was a description of a black doctor and there was no one like that who worked in the way that that word is translated in Russian and so forth, that was not the main question or the main inconsistency in the debriefings that defense counsel sought to introduce. That was just the first question that actually came in and then was struck later on by Judge Scofield. There were certainly other issues that Mr. Schoenbach sought to get into that were not allowed. There were other issues in the debriefing. So it is not a very narrow area that was disallowed. Lastly, the notice requirement, I believe, was relaxed so that if there is an issue such as late death, that that would be something where, and I apologize if I misspoke, that that is something that perhaps under the new rule could relax the notice requirement. Meaning such as a recent death of a witness in terms of whether notice could be, the notice requirement could have been relaxed. Thank you. Thank you both. We appreciate your arguments very much. Excellent. We put forward.